*Formatted for Electronic Distribution*                                                                                          *Not for Publication*

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF VERMONT

In re:

    LaVictoire Drilling & Blasting, Inc.                                             Chapter 7 Case
           Debtor.                                                       # 04-10618

    CIT Financial USA, Inc.
           Plaintiff,
          v.                                                  Adversary Proceeding
    Banknorth, N.A.                                             # 04-1063
           Defendant.

(Seal: UNITED STATES BANKRUPTCY COURT DISTRICT OF VERMONT — Filed & Entered On Docket 06/28/05)

*Appearances:*      *Benjamin Marks, Esq.*                            *Andre Bouffard, Esq.*
                              *Sheehey Furlong & Behm P.C.*             *Downs Rachlin Martin PLLC*
                              *Burlington, VT*                                         *Burlington, VT*
                              *Attorney for Plaintiff*                            *Attorney for Defendant*

## MEMORANDUM OF DECISION
### GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

CIT Financial USA, Inc. ("CIT") and Banknorth, NA ("Banknorth") each claim a first lien position in a certain Sullivan Scorpion Drifter Drill with serial number 43293 (hereinafter referred to as the "Drill"). By agreement of CIT and Banknorth (the "Parties"), the Drill has been sold.[1] The Parties have filed cross motions for summary judgment seeking a determination of which creditor has first priority in the Drill and its proceeds. To determine which creditor has priority, the Court must apply the transition rules governing Article 9 of the Uniform Commercial Code, as recently amended. Based upon the record and applicable law, the Court finds that there are no material facts in dispute, that summary judgment is proper in this proceeding, and that the Plaintiff is entitled to judgment as a matter of law.

### JURISDICTION

This Court has jurisdiction to enter a final order pursuant to 28 U.S.C. §§ 157(b)(2)(K) and 1334.

### BACKGROUND FACTS

On February 11, 2005, the Parties filed a Stipulation of Facts (doc # 23) setting forth forty-three facts that the Parties agreed were both material and undisputed. While this stipulation is very helpful and provides important background information, the Court finds that the material facts essential to the resolution of the cross motions for summary judgment are less numerous. They are as follows:

---

[1] Banknorth holds the proceeds from the sale of the Drill in escrow pending resolution of the priority of the asserted liens.

1. On April 26, 1999, LaVictoire Blasting, Inc. (LBI) purchased the Drill with cash loaned to it under an installment note payable to Newcourt Financial USA, Inc. (Newcourt), in which LBI promised to repay $213,223.20 (the "Note") (Stip. of Facts at ¶10).

2. On April 26, 1999, LBI and Newcourt signed a security agreement identifying the Drill as one of the items of collateral securing the Note and granting Newcourt a security interest in the Drill (Id. at ¶ 9).

3. On May 27, 1999, LBI took possession of the Drill (Id. at ¶ 13).

4. On June 7, 1999, Newcourt filed financing statement 99-110981 with the Vermont Secretary of State to perfect its security interest, identifying several items of collateral, including the Drill, and naming LBI as the debtor (Id. at ¶¶ 14-17).

5. At the time LBI entered into the security agreement with Newcourt, LBI was incorporated in Connecticut (Id. at ¶ 3) and had its place of business at 3777 Walker Mountain Road, West Rutland, Vermont (Id. at ¶ 4).

6. In July 1999, LBI's principals formed a new Vermont corporation called LaVictoire Drilling and Blasting, Inc. ("LDBI") with a principal place of business at 3337 Walker Mountain Road (Id. at ¶ 7).

7. After July 14, 1999, the Drill remained in LDBI's possession (Id. at ¶ 21).

8. There was no bill of sale transferring ownership of the Drill from LBI to LDBI (Id. at ¶ 22).

9. In September of 1999, all the stock of the 100% parent corporation of Newcourt was acquired by the parent company of The CIT Group / Equipment Financing, Inc. The name of Newcourt was subsequently changed to CIT Financial USA, Inc. ("CIT") and CIT assumed all of Newcourt's rights under the Note, the security agreement and financing statement 99-110981 (Id. at ¶ 24).[2]

10. In April 2003, LDBI borrowed money from Banknorth and granted a security interest to Banknorth in the form of a "blanket lien" against all of LDBI's assets including but not limited to: "all inventory, equipment…and all products and proceeds…of or relating to the foregoing property." Thereafter on May 13, 2003, Banknorth filed financing statement No. 03-164743 with the Vermont Secretary of State naming LDBI as debtor (Id. at ¶ 32-33).

11. On March 13, 2004, CIT filed an initial financing statement (an "in-lieu-of statement") CT-002252242 in the office of the Secretary of State of Connecticut (Id. at ¶ 35).

12. In April 2004, CIT learned that Banknorth had taken possession of the Drill intending to sell it at auction (Id. at ¶ 39).

13. In April 2004, CIT demanded in writing that Banknorth return the Drill; Banknorth refused (Id. at ¶¶ 40-41; CIT Motion for Summary Judgment (doc # 25) at pp 2-3).

14. Through at least December 27, 2004, LBI was still an extant Connecticut corporation (Stip. of Facts at ¶ 5).

In the cross motions for summary judgment, CIT and Banknorth each allege that its interest in the Drill, and the Drill's proceeds, is superior to that of the other. See generally, 9A V.S.A. §9–306 (law governing priority of security interests). Banknorth argues that CIT's security interest in the Drill was not properly perfected under Vermont law and thus, Banknorth is entitled to judgment as a matter of law. CIT argues that it properly perfected its security interest prior to Banknorth, properly filed its in-lieu-of statement in Connecticut, and is therefore has priority over Banknorth.

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the record shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c); FED. R. BANKR. P. 7056. A genuine issue exists only when "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. See Anderson, 477 U.S. at 247. Factual disputes that are irrelevant or unnecessary are not material. See id. The court must view all the evidence in the light most favorable to the nonmoving party and draw all inferences in the nonmovant's favor. See Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir. 1992). In making its determination, the court's sole function is to determine whether there is any material dispute of fact that requires a trial. See Anderson, 477 U.S. at 249; see also Palmieri v. Lynch, 392 F.3d 73, 82 (2d Cir. 2004); Delaware & Hudson Ry. Co. v. Conrail, 902 F.2d 174, 178 (2d Cir. 1990).

Neither party asserts any material fact to be in dispute. The Court finds that there is no material dispute of fact that requires a trial in this adversary proceeding.

### DISCUSSION

The amendments to Article 9 of the Uniform Commercial Code (UCC) which govern perfection of security interests became effective on July 1, 2001. See 9A V.S.A. §§ 9–101 and 9–701. For ease of reference, the Court will refer to Article 9 of the UCC, as amended, as the "Amended Article 9" and the version of Article 9 in effect prior to July 1, 2001 as the "Old Article 9." Due to the timing of the transactions at issue, it is necessary for the Court to discuss both versions of Article 9. See 9A V.S.A. §9–702 *et seq.* (the "Transition Rules").

---

[2] References to CIT herein include the acts of Newcourt as its predecessor-in-interest.

3

### A. Under the "Old" Article 9, CIT was properly perfected as to LBI.

CIT's motion for summary judgment relies upon the following five undisputed material facts:

1. In April and May of 1999, respectively, CIT gave value to LBI and LBI purchased the Drill with the funds loaned by CIT.

2. CIT had a valid and binding security agreement with LBI.

3. On June 7, 1999, CIT perfected its security interest in the Drill by filing financing statement No. 99-110981 with the Secretary of State of Vermont, naming LBI as the debtor and the Drill as part of its collateral.

4. On May 13, 2003, Banknorth perfected its security interest against the Drill (as an asset of LDBI).

5. In April 2004, Banknorth repossessed the Drill and refused to turn it over to CIT.

CIT's Reply (doc #35) page 2. Banknorth has not disputed any of these facts and accordingly the Court deems these facts undisputed in accordance with Vt. LBR 7056-1(a)(3).

At the outset, it is important to recognize that CIT's security interest in the Drill need not be perfected in order to be enforceable against LBI; its perfection is critical only insofar as Banknorth asserts a competing interest in the Drill. Matter of Vintero Corp., 735 F.2d 740, 742 (2d Cir.), cert. denied, 469 U.S. 1087 (1984) ("perfection is important only insofar as adverse third parties have entered the picture"). Since there is a dispute between two competing creditors, the Court determines the validity of CIT's perfection of its security interest.

On April 25, 1999, when the Note was executed, and after CIT had given value to LBI, LBI was a Connecticut corporation (see Stip. of Facts, doc. # 23, ¶3). At that time, LBI's only place of business was in West Rutland, Vermont (Id. at ¶4). On June 7, 1999, CIT (through its predecessor Newcourt) filed financing statement 99-110981 with the Vermont Secretary of State identifying its security interest in the Drill; CIT filed in Vermont because the Drill was to be located in Vermont (Id. at ¶¶14-17). Under the Old Article 9, which was operative at that time, the Vermont Secretary of State was the correct office for the filing of CIT's financing statement because the collateral in question was located in Vermont and the location of collateral determined where to file for perfection of security interest. See former 9A V.S.A. §§ 9–101 et seq. Thus, under the Old Article 9, CIT properly perfected its security interest in the Drill as to LBI on June 7, 1999.

### B. The alleged transfer did not affect CIT's perfected status.

Banknorth contends that CIT lost its perfected status when, on March 13, 2004, CIT filed an in-lieu-of statement in Connecticut, and failed to perfect in Vermont. Banknorth argues first that LDBI, a Vermont corporation, had become the "new debtor" with respect to the Drill in December 1999 and thus that Vermont law governs the continuation of CIT's claimed security interest in the Drill thereafter. 9A V.S.A. §9–301.[3]

---

[3] Article 9, § 9-301 provides that while a debtor is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in collateral. Hence, Connecticut law applies to LBI.

4

Since only Banknorth properly perfected its interest in the Drill under Vermont law with respect to LDBI (filing in Vermont since LDBI is a Vermont corporation), Banknorth concludes it has the first lien against the Drill. See 9A V.S.A. §9–307. This conclusion, however, is only as valid as the underlying premises. Since the uncontroverted evidence does not persuade the Court either that LDBI became the actual owner of the Drill, or that LDBI became the legally obligated debtor with respect to the loans secured by the Drill, the Court rejects Banknorth's conclusion.[4]

Although the principals of LBI formed LDBI in July of 1999, LBI continued to be an active Connecticut corporation through as late as December 2004. There is no evidence that LBI merged into LDBI as a matter of law. Banknorth points to the fact that LBI had not remained current in its reporting obligations to the state of Connecticut as the basis for its position that LBI was not an extant Connecticut corporation, urging the Court to treat LBI's active status as irrelevant. The Court is not persuaded by this argument. Regardless of whether LBI remained current with its reporting obligations, the undisputed facts make clear that LBI continued in existence in the state of Connecticut through at least December of 2004 (Stip. of Facts at ¶ 5). Likewise, the Court finds the statement of Jean LaVictoire, one of LBI's principals, that the family "switched the Connecticut corporation to a Vermont corporation" to be of no legal significance. As of the date that Banknorth took possession of the Drill in April 2004, LBI was validly incorporated under the laws of Connecticut.[5]

Second, BankNorth argues that CIT lost its secured status by filing in another state because Vermont was the only valid filing location. CIT filed its "in-lieu-of" financing statement with the Connecticut Secretary of State and identified the filing date and file number of the original UCC-1 filed with the Vermont Secretary of State in 1999 (Stip. of Facts ¶¶ 35 and 37). The Court finds this filing was proper. LBI was then and is now a Connecticut corporation and therefore Connecticut law controls. Under C.G.S.A. § 42a-9-501, the Connecticut Secretary of State is the correct office in which CIT should have filed its financing statement to remain perfected. C.G.S.A. § 42a-9–501(a)(2) specifies that the office of the Secretary of State is the proper place for filing a financing statement to perfect a security interest in collateral that is not as-extracted collateral or timber and the filing is not a fixture filing. Because the Drill is not as-extracted collateral, timber

---

[4] Banknorth argues that because CIT sought relief from stay with respect to the Drill in the bankruptcy case of LBDI that it should be judicially estopped from arguing that the Drill is owned by LBI. The doctrine of judicial estoppel prevents a party from successfully asserting one position to its own advantage, obtaining relief from a court based on that position and then subsequently assuming a contradictory position for its further advantage. In other words, the doctrine "prevents a party from playing 'fast and loose' with the judicial system." In re Kelley, 163 B.R. 27, 33- 34 (Bankr. E.D.N.Y. 1993). The positions of CIT at the time of its lift stay motion and its current cross motion for summary judgment are not sufficiently contradictory to warrant application of the doctrine of judicial estoppel. In its lift stay motion, CIT identified LBI as the obligor and identified the Drill as collateral under the Note (doc. # 28 ¶ 5 in case # 04-10618). Therefore, to the extent there was any question about who owned the Drill, the Court finds seeking relief from stay vis a vis LBDI to have been an abundance of caution and an appropriate exercise of deference to the automatic stay.

[5] Procedures exist under Connecticut's corporation statute for the dissolution of a Connecticut corporation. See generally, C.G.S.A. § 33-880, et seq. (2004). It is undisputed that neither LBI's principals nor its board initiated these procedures or took any other steps to dissolve the corporation.

5

to be cut, or a fixture, the Secretary of State was the correct place for CIT to file. See also, 9A V.S.A. § 9-307.

Third, Banknorth also asserts that under sections 9-705 and 9-706 of the Amended Article 9, as adopted in Vermont, the only valid way for CIT to have continued its financing statement was for it to have filed a continuation statement in Vermont, and CIT failed to do this. In relevant part, § 9-706 provides:

> § 9-706 When initial financing statement suffices as continuation statement
> (a) The filing of an initial financing statement in the office specified in Section 9–501 of this article as in effect on and after July 1, 2001, continues the effectiveness of a financing statement filed before July 1, 2001 for the period provided in Section 9–515 of this article as in effect on and after July 1, 2001, with respect to an initial financing statement if:
> (1) the filing of an initial financing statement in that office would be effective to perfect a security interest under the provisions of this article as in effect on and after July 1, 2001;
> (2) the preeffective-date financing statement was filed in an office in another state or another office in this state; and
> (3) the initial financing statement satisfies subsection (c) of this section.
> (b) Period of continued effectiveness. The filing of an initial financing statement under subsection (a) continues the effectiveness of the preeffective-date financing statement:
> (1) if the initial financing statement is filed before July 1, 2001, for the period provided in Section 9–403 as in effect prior to July 1, 2001, with respect to a financing statement; and
> (2) if the financing statement is filed after July 1, 2001, for the period provided in Section 9–515 of this article as in effect on and after July 1, 2001, with respect to an initial financing statement.
> …

The Court finds that under 9-706(b) CIT was properly perfected (by the Connecticut filing) and did not need to file a continuation statement in Vermont to retain its perfected status.

Banknorth's fourth argument on this point is that LDBI assumed responsibility for the payment of the Note, and thus that LDBI became the "new debtor" with respect to the Drill. However, there is no bill of sale conveying the Drill from LBI to LDBI (Stip. of Facts ¶ 22) and no evidence in the record that LBI ever transferred the Drill. Moreover, the security agreement between LBI and CIT [Newcourt] required LBI to obtain prior written consent to assign, transfer or dispose of the Drill (Id. at ¶ 23). It is undisputed that LBI never sought CIT's consent for a transfer of the Drill and CIT's internal collections department logs provide no probative evidence that CIT agreed to such a transfer (Def. Ex. K-M), or waived the written consent requirement. To the contrary, the logs consistently refer to the debtor as LBI (Id.). CIT continued to correspond about the subject loan with the people who happened to be the principals of both LBI and LDBI.

The Court finds that LBI never legally assigned the debt, or transferred the Drill, to LDBI and that LDBI's assumption of the payment obligation under the Note did not transfer ownership of the Drill. Accordingly, the debtor under the Note continued to be LBI and CIT was properly perfected in LBI's Drill.

6

### C. Under the Amended Article 9, CIT maintains its perfected status.

Banknorth acknowledges that under the Transition Rules, the provisions of the Amended Article 9 "do not render ineffective an effective financing statement that is filed before July 1, 2001 and satisfied the applicable requirements for perfection under the law of the jurisdiction governing perfection as provided in Section 9-103 [the Old Article 9] as in effect prior to July 1, 2001." (See doc. # 26, p. 6). The Court has found that CIT's June 1999 financing statement was effective. Thus, even if CIT should have filed a continuation statement in Vermont, and the Court does not find it should have, CIT continued to be properly perfected in April 2004 because its original financing statement did not expire until June 7, 2004. See 9A V.S.A. §§ 9–403 [Old Article 9] and 9–515 [Amended Article 9].

Since CIT properly perfected its interest in the Drill prior to Banknorth, then under both Vermont and Connecticut law, CIT's security interest in the Drill as of April 2004 was superior to the security interest of Banknorth. 9A V.S.A. §9–322(a)(1); C.G.S.A. § 42a-9-322.

It is well established that a security interest attaches to any identifiable proceeds of the collateral. See C.G.S.A. § 42a–9–315; see also, 9A V.S.A. §9–315. Accordingly, CIT's security interest in the Drill attaches to the proceeds from the sale of the Drill. Even assuming *arguendo* that CIT should have filed a continuation statement in Vermont, CIT had properly filed its in-lieu-of statement with the Connecticut Secretary of State, and consequently as of April 2004, when Banknorth took possession of the Drill and refused to turn it over to CIT, CIT's security interest in the Drill was properly perfected and superior to that of Banknorth. Therefore, CIT is entitled to summary judgment.

### D. The Parties' remaining arguments need not be addressed.

The Parties have raised several other arguments, based upon various theories and various current and former versions of article 9 provisions. The Court has considered all of the Parties' arguments and has found all arguments not addressed in this memorandum of decision to be inapposite, without merit, or superfluous to the Court's determination of lien priority.

### CONCLUSION

Based upon the foregoing, the Court finds that CIT properly perfected its security interest in the Drill, that LBI did not transfer the Drill to LDBI, that Banknorth's perfection of a security interest in the Drill was subsequent in time and subordinate in priority to CIT's lien, and that CIT's security interest in the Drill remained superior to that of Banknorth's through the date of sale. Therefore, the Court grants CIT's motion for summary judgment and denies Banknorth's motion for summary judgment.

The Parties have indicated that Banknorth is holding the proceeds of the sale of the Drill in escrow**.** Since the Court finds that CIT's lien is superior to Banknorth's it directs Banknorth to pay to CIT the amount due to CIT on its lien as of the date of sale, plus the interest that has accrued on that sum since the date of sale.[6]

This constitutes the Court's findings of fact and conclusions of law.

_____ _Colleen A. Brown_____

June 28, 2005  Colleen A. Brown
Rutland, Vermont  United States Bankruptcy Judge

---

[6] If Banknorth has not held the funds in an interest bearing escrow account it is directed to pay interest to CIT at the rate interest would have accrued at Banknorth if the funds were held in an interest bearing account.

8